IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC., <br><br> Plaintiff, <br> v. <br><br> ECOBEE, INC., <br><br> Defendant. | Case No.: **6:22-cv-00033** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT AGAINST
<u>ECOBEE, INC.</u>**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff EcoFactor, Inc. ("Plaintiff" or "EcoFactor") makes the following allegations against Defendant ecobee, Inc. ("Defendant"):

<u>**INTRODUCTION**</u>

1. This complaint arises from Defendant's unlawful infringement of the following United States patents owned by EcoFactor: U.S. Patent No. 8,131,497 ("'497 Patent"); U.S. Patent No. 8,423,322 ("'322 Patent"); U.S. Patent No. 8,498,753 ("'753 Patent"); and U.S. Patent No. 10,018,371 ("'371 Patent") (collectively the "Asserted Patents"). EcoFactor owns all right, title, and interest in each of the Asserted Patents.

2. EcoFactor is a privately held company, having its principal place of business at 441 California Avenue, Number 2, Palo Alto, CA 94301. EcoFactor was founded in 2006 and is headquartered in Palo Alto, California. EcoFactor is a leader in smart home energy management services. EcoFactor delivers smart home energy management services that improve energy efficiency, reduce energy bills and vastly increase demand response efficacy – all while maintaining consumer comfort. EcoFactor's patented big-data analytics and machine learning

1

algorithms collect and process massive amounts of residential data – including home thermodynamics, family comfort preferences and schedules, plus external data such as weather – to continually monitor, adapt and learn for optimum energy savings. The company provides homeowners significant cost savings and energy usage benefits. EcoFactor's award-winning service has been offered through channel partners such as utilities, energy retailers, broadband service providers and HVAC companies.

3. EcoFactor transformed how homes use energy by applying advanced analytics to connected devices in the home. EcoFactor developed a suite of software known as the "EcoFactor Platform" that incorporates EcoFactor's patented data analytics and machine learning algorithms, as well as EcoFactor's award-winning smart HVAC control technologies. The EcoFactor Platform is software that runs on servers, including cloud servers, in the United States, and provides service to customers in the United States. The source code of the EcoFactor Platform, including for example the platform, quant, and mobile application source code, that comprises the EcoFactor Platform was designed by, created by, and is continuously maintained and improved by EcoFactor employees working in the United States. The EcoFactor Platform actively manages thermostats on occupants' behalf in intelligent ways that improve comfort while helping them save time, energy and money. Utilities, home service providers and homeowners rely on EcoFactor for demand response, energy efficiency, and HVAC performance monitoring services. The EcoFactor Platform includes the software that practices EcoFactor's patents on these features. For example, the EcoFactor Platform includes EcoFactor's patented techniques for monitoring the health and performance of HVAC systems over time, smart thermostat scheduling to improve energy savings and optimize comfort for occupants, and thermodynamic modeling of the user's home and HVAC system to enable dynamic pre-cooling and pre-heating to further improve comfort, save energy, or

both, by creating comfortable schedules that also shift energy usage out of periods of peak energy demand.

4. The patented innovations at issue in this action were invented by EcoFactor engineers and researchers. EcoFactor has played a significant role in the development and advancement of such improvements to energy management technology—and the domestic market for them. EcoFactor has expended tens of millions of dollars of research and development and technical services and support in the United States. In recent years, an explosion of imported products that infringe EcoFactor's innovative Asserted Patents has significantly eroded EcoFactor's market standing. This infringement action is about several patented improvements to smart thermostat systems, smart HVAC systems, and smart HVAC control systems—which took years of research and millions of dollars in U.S. investments to develop, and which are infringed by Defendant's accused products.

## **PARTIES**

5. Plaintiff EcoFactor is a privately held company, having its principal place of business at 441 California Avenue, Number 2, Palo Alto, CA 94301. EcoFactor was founded in 2006 and is headquartered in Palo Alto, California. EcoFactor is the sole owner of all right, title, and interest in each Asserted Patents.

6. ecobee, Inc. is a Canadian corporation with its principal place of business at 25 Dockside Drive, Suite 700, Toronto, ON M5A 0B5, Canada.

## **JURISDICTION AND VENUE**

7. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the Asserted Patents.

9. Venue is proper in this District under 28 U.S.C. § 1400(b). Defendant is a foreign corporations subject to suit in any district. 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018). Upon information and belief, Defendant has transacted business in this District and have committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the Asserted Patents. Defendant has, for example, partnered with Austin Energy to offer incentives for customers in this District to purchase the infringing products, and Defendant has and continues to target advertisement to potential customers in this District.

**THE TECHNOLOGY AND PRODUCTS AT ISSUE**

10. The products accused of infringing one or more of the Asserted Patents are smart thermostat systems, smart HVAC systems, smart HVAC control systems, and all components (including accessories) thereof offered for sale by Defendant.

11. The Accused Products include thermostat systems that connect to and control an HVAC system, they include smart HVAC systems, and they include components of such systems such as, for example, hubs, panels, and remote sensors. These thermostat devices communicate over a network with other devices and systems offered by Defendant. The Accused Products

connect to the network managed by Defendant via the Internet. For example, the Accused Products connect to Defendant's networked servers and data centers, online interfaces, and related accessories.

12. When connected as designed, the Accused Products form a smart thermostat system, smart HVAC system, and/or smart HVAC control system. Defendant's smart thermostat systems are "smart" because they are designed to connect to Defendant's servers and data centers (including, e.g., cloud-based servers and backend support), related online interfaces (including, e.g., mobile apps and web portals), and related accessories (e.g., remote temperature sensors), upon importation in the United States. Further, Defendant's smart thermostat systems are "smart" because they support and are marketed as providing features to end users that analyze thermostat and HVAC system data gathered by the smart thermostat systems.

13. The Accused Products constitute the "frontend" of the smart thermostat system, smart HVAC system, and/or smart HVAC control system. Such smart thermostat devices can be programmed using the servers and the network maintained by Defendant and which form the "backend" for the smart thermostat. Such smart thermostat systems can be programmed remotely with a web or mobile application offered by Defendant. The web or mobile application communicates with the smart thermostat via computer servers or data centers managed by Defendant, who sells and imports the smart thermostat. Each Defendant allows an end user to use a web or mobile application on a mobile phone, tablet, laptop, or other computing device to control the smart thermostat systems, such as by adjusting temperature settings. Defendant's smart thermostat systems also communicate data using the network. For example, Defendant's smart thermostat systems send and receive temperature data and/or temperature settings using the network.

14. Defendant's Accused Products are designed and specially made and adapted to infringe claims of the Asserted Patents and to embody a material part of the claimed inventions. The Accused Products are installed and used in the United States according to Defendant's design and instructions. Defendant has knowledge as well as notice of its infringement of each asserted patent since at least October 21, 2019. Defendant knowingly induces and encourages the use of the Accused Products in the United States in a manner that infringes the asserted claims of the Asserted Patents. Defendant infringes the Asserted Patents directly, through making, using, selling, and/or offering for sale the Accused Products. Defendant also infringes the Asserted Patents indirectly, both for example through contributory infringement as well as through induced infringement. The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,423,322

15. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

16. Plaintiff owns all rights, title, and interest in United States Patent No. 8,423,322, titled "System and method for evaluating changes in the efficiency of an HVAC system." The '322 Patent was duly and legally issued by the United States Patent and Trademark Office on April 16, 2013. Plaintiff is the owner and assignee, possessing all substantial rights, to the '322 Patent. A true and correct copy of the '322 Patent is attached as Exhibit 1.

17. On information and belief, Defendant makes, uses, offers for sale, sells, and/or

imports (or has done so within the damages period) certain smart thermostat products ("Accused Products"), such as the ecobee3, ecobee3 lite, ecobee4, and ecobee SmartThermostat with Voice Control, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-14 of the '322 Patent. The Accused Products additionally include ecobee servers, backend systems, web portals, APIs, mobile apps, and remote sensor accessories (e.g., SmartSensor) that supporting these thermostats.

18. The infringement of the '322 Patent is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

19. Defendant also knowingly and intentionally induces infringement of claims of the '322 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Defendant has had knowledge of the '322 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '322 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '322 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '322 Patent, thereby specifically intending for and inducing its customers to infringe the '322 Patent through the customers' normal and customary use of the Accused Products.

20. Defendant has also infringed, and continue to infringe, claims of the '322 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the

Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '322 Patent, in violation of 35 U.S.C. § 271(c).

21. The Accused Products satisfy all claim limitations of claims of the '322 Patent. A claim chart comparing claim elements of the '322 Patent to representative Accused Products is attached as Exhibit 2.

22. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured Plaintiff and is liable for infringement of the '322 Patent pursuant to 35 U.S.C. § 271.

23. As a result of Defendant's infringement of the '322 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

24. Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '322 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

25. Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '322 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October

21, 2019, that these activities infringe the '322 Patent. Plaintiff is therefore entitled to enhanced damages.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,131,497

26. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

27. Plaintiff is the owner and assignee of United States Patent No. 8,131,497, titled "System and method for calculating the thermal mass of a building." The '497 patent was duly and legally issued by the United States Patent and Trademark Office on March 6, 2012. Plaintiff is the owner and assignee, possessing all substantial rights, to the '497 Patent. A true and correct copy of the '497 Patent is attached as Exhibit 3.

28. On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports (or has done so within the damages period) certain smart thermostat products ("Accused Products"), such as the ecobee3, ecobee3 lite, ecobee4, and ecobee SmartThermostat with Voice Control, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-12 of the '497 Patent. The Accused Products additionally include ecobee servers, backend systems, web portals, APIs, mobile apps, and remote sensor accessories (e.g., SmartSensor) that supporting these thermostats.

29. The infringement of the '497 Patent is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

30. Defendant also knowingly and intentionally induces infringement of claims of

the '497 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Defendant has had knowledge of the '497 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '497 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '497 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '497 Patent, thereby specifically intending for and inducing its customers to infringe the '497 Patent through the customers' normal and customary use of the Accused Products.

31. Defendant has also infringed, and continue to infringe, claims of the '497 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '497 Patent, in violation of 35 U.S.C. § 271(c).

32. The Accused Products satisfy all claim limitations of claims of the '497 Patent. A claim chart comparing claim elements of the '497 Patent to representative Accused Products is attached as Exhibit 4.

33. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured Plaintiff and is liable for infringement of the '497

Patent pursuant to 35 U.S.C. § 271.

34. As a result of Defendant's infringement of the '497 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

35. Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '497 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

36. Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '497 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '497 Patent. Plaintiff is therefore entitled to enhanced damages.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,498,753

37. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

38. Plaintiff is the owner and assignee of United States Patent No. 8,498,753 titled "System, method and apparatus for just-in-time conditioning using a thermostat." The '753 Patent was duly and legally issued by the United States Patent and Trademark Office on July 30, 2013. Plaintiff is the owner and assignee, possessing all substantial rights, to the '753 Patent. A true and correct copy of the '753 Patent is attached as Exhibit 5.

39. On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports (or has done so within the damages period) certain smart thermostat products ("Accused Products"), such as the ecobee3, ecobee3 lite, ecobee4, and ecobee SmartThermostat with Voice Control, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-20 of the '753 Patent. The Accused Products additionally include ecobee servers, backend systems, web portals, APIs, mobile apps, and remote sensor accessories (e.g., SmartSensor) that supporting these thermostats.

40. The infringement of the '753 Patent is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

41. Defendant also knowingly and intentionally induces infringement of claims of the '753 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Defendant has had knowledge of the '753 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '753 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '753 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '753 Patent, thereby specifically intending for and inducing its customers to infringe the '753 Patent through the customers' normal and customary use of the Accused Products.

42. Defendant has also infringed, and continue to infringe, claims of the '753 Patent by

offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '753 Patent, in violation of 35 U.S.C. § 271(c).

43. The Accused Products satisfy all claim limitations of claims of the '753 Patent. A claim chart comparing claim elements of the '753 Patent to representative Accused Products is attached as Exhibit 6.

44. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured Plaintiff and is liable for infringement of the '753 Patent pursuant to 35 U.S.C. § 271.

45. As a result of Defendant's infringement of the '753 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

46. Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '753 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

47. Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '753 Patent, through making, using,

selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '753 Patent. Plaintiff is therefore entitled to enhanced damages.

**COUNT IV**

**INFRINGEMENT OF U.S. PATENT NO. 10,018,371**

48. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

49. Plaintiff is the owner and assignee of United States Patent No. 10,018,371, titled "System, method and apparatus for identifying manual inputs to and adaptive programming of a thermostat." The '371 Patent was duly and legally issued by the United States Patent and Trademark Office on July 10, 2018. Plaintiff is the owner and assignee, possessing all substantial rights, to the '371 Patent. A true and correct copy of the '371 Patent is attached as Exhibit 7.

50. On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports (or has done so within the damages period) certain smart thermostat products ("Accused Products"), such as the ecobee3, ecobee3 lite, ecobee4, and ecobee SmartThermostat with Voice Control, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-24 of the '371 Patent. The Accused Products additionally include ecobee servers, backend systems, web portals, APIs, mobile apps, and remote sensor accessories (e.g., SmartSensor) that supporting these thermostats.

51. The infringement of the '371 Patent is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

52. Defendant also knowingly and intentionally induces infringement of claims of the '371 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Defendant has had knowledge of the '371 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '371 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '371 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '371 Patent, thereby specifically intending for and inducing its customers to infringe the '371 Patent through the customers' normal and customary use of the Accused Products.

53. Defendant has also infringed, and continue to infringe, claims of the '371 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '371 Patent, in violation of 35 U.S.C. § 271(c).

54. The Accused Products satisfy all claim limitations of claims of the '371 Patent. A claim chart comparing claim elements of the '371 Patent to representative Accused Products is attached as Exhibit 8.

55. By making, using, offering for sale, selling and/or importing into the United States

the Accused Products, Defendant has injured Plaintiff and is liable for infringement of the '371 Patent pursuant to 35 U.S.C. § 271.

56. As a result of Defendant's infringement of the '371 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

57. Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '371 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

58. Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '371 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '371 Patent. Plaintiff is therefore entitled to enhanced damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendant has infringed, literally and/or under the doctrine of equivalents, the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

b. A judgment in favor of Plaintiff that Defendant's infringement of the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent has been willful and egregious under 35 U.S.C. § 284;

c. A permanent injunction prohibiting Defendant from further acts of infringement of

the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

      d.      A judgment and order requiring Defendant to pay Plaintiff its damages, enhanced damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

      e.      A judgment and order requiring Defendant to provide accountings and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

      f.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

      g.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: January 10, 2022

Respectfully submitted,

/s/ *Reza Mirzaie*
Reza Mirzaie
Marc A. Fenster
James N. Pickens
Kristopher R. Davis
Minna Y. Chan
Adam S. Hoffman
Jason M. Wietholter
RUSS AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991

rmirzaie@raklaw.com
mfenster@raklaw.com
jpickens@raklaw.com
kdavis@raklaw.com
mchan@raklaw.com
ahoffman@raklaw.com
jwietholter@raklaw.com
rak_ecofactor@raklaw.com

Matthew D. Aichele
RUSS AUGUST & KABAT
800 Maine Ave SW, Suite 200
Washington, DC. 20024
Telephone: (202) 664-0623
maichele@raklaw.com

***Attorneys for Plaintiff EcoFactor, Inc.***