# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| ECOFACTOR, INC., | |
| Plaintiff, | Case No. 6:22-cv-00033-ADA |
| v. | |
| ECOBEE INC., | |
| Defendant. | |

**ECOFACTOR'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO ECOBEE'S COUNTERCLAIMS FOR MALICIOUS PROSECUTION AND ABUSE OF PROCESS**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

    A.   The Parties and Their Prior Litigation History ........................................... 2

        1.   ITC Investigation No. 337-TA-1185 ............................................... 2

        2.   ITC Investigation No. 337-TA-1258 ............................................... 4

        3.   District Court Litigation ................................................................... 5

    B.   This Court's Denial of ecobee's Rule 11 Motion for Sanctions ................. 7

III.  LEGAL STANDARD ........................................................................................... 8

    A.   Motion for Judgment on the Pleadings ...................................................... 8

    B.   Choice of Law for ecobee's Tort Claims ................................................... 9

        1.   Malicious Prosecution ..................................................................... 10

        2.   Abuse of Process ............................................................................. 10

IV.   ARGUMENT ...................................................................................................... 11

    A.   ecobee's Tort Claims Are Barred Under the *Noerr-Pennington* Doctrine ................ 11

    B.   ecobee Has Failed to Plead Sufficient Facts to Support Its Claims for Malicious Prosecution and Abuse of Process ........................................... 14

        1.   ecobee fails to state a claim for malicious prosecution ................... 14

        2.   ecobee fails to state a claim for abuse of process ........................... 17

V.    CONCLUSION................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*800 Adept, Inc. v. Murex Sec., Ltd.*,
    539 F.3d 1354 (Fed. Cir. 2008)............................................................ 14, 17

*Abbott Labs. v. Brennan*,
    952 F.2d 1346 (Fed. Cir. 1992)................................................................ 17

*Alifax Holding SPA v. Alcor Sci. Inc.*,
    No. CV 14-440 WES, 2019 WL 13091790 (D.R.I. Mar. 26, 2019)...................... 12

*Ambler v. Williamson Cnty., Texas*,
    No. 1-20-CV-1068-LY, 2021 WL 769667 (W.D. Tex. Feb. 25, 2021)...................... 2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................ 8

*Avitech, LLC v. Embrex, Inc.*,
    No. WMN-04-3082, 2008 WL 11287093 (D. Md. Aug. 19, 2008)................... 12, 15

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989)................................................................ 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................ 8

*Blakeney v. O'Donnell*,
    117 F. Supp. 3d 6, 20 (D.D.C. 2015)........................................................ 16

*California Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972).............................................................................. 11

*Cantu v. Guerra*,
    No. SA-20-CV-0746-JKP-HJB, 2021 WL 2652933 (W.D. Tex. June 28, 2021) ............ 18

*Carroll Touch, Inc. v. Electro Mech. Sys.*, Inc.,
    15 F.3d 1573 (Fed. Cir. 1993).................................................................. 11

*Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*,
    No. CIV. CCB-13-1798, 2014 WL 3510212 (D. Md. July 11, 2014) .................... 16

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
    168 F.3d 119 (3d Cir. 1999).................................................................... 11

*Competitive Techs. v. Fujitsu Ltd.*,
    286 F. Supp. 2d 1118 (N.D. Cal. 2003) .................................................. 9, 17

*Deere & Co. v. Kinze Mfg., Inc.*,
    No. 4:20-cv-00389-RGE-SHL, Dkt. 164  (S.D. Iowa Feb. 16, 2022) ................ 13, 18

*DTEX, LLC v. BBVA Bancomer, S.A.*,
    508 F.3d 785 (5th Cir. 2007) .................................................................... 9

*EcoFactor, Inc. v. ecobee, Inc.*,
    No. 1:19-cv-12325-PBS (D. Mass.)..................................................................... 6, 7

*Gen-Probe, Inc. v. Amoco Corp.*,
    926 F. Supp. 948 (S.D. Cal. 1996)............................................................ 11, 13, 15

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
    362 F.3d 1367  (Fed. Cir. 2004)............................................................... 12, 13, 15

*Gust, Inc. v. AlphaCap Ventures, LLC*,
    No. 15CV6192 (DLC), 2016 WL 4098544 (S.D.N.Y. July 28, 2016)..................... 18

*HC2, Inc. v. Delaney*,
    510 F. Supp. 3d 86 (S.D.N.Y. 2020) .............................................................. 18, 19

*Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*,
    677 F. Supp. 2d 195 (D.D.C. 2010) .......................................................... 10, 17, 18

*In re Bath & Kitchen Fixtures Antitrust Litig.*,
    535 F.3d 161 (3d Cir. 2008)................................................................................... 6

*In re Burzynski*,
    989 F.2d 733 (5th Cir. 1993) .............................................................................. 18

*In the Matter of Certain Smart Thermostat Systems, Smart HVAC Systems, Smart HVAC Control Systems, And Components Thereof*, Inv. No. 337-TA-1258.................... 4

*In the Matter of Certain Smart Thermostats, Smart HVAC Systems, and Components Thereof*, Inv. No. 337-TA-1185 .............................................................................. 3

*IT Casino Sols., LLC v. Transient Path, LLC*,
    No. 21-CV-09872-WHO, 2022 WL 4913526 (N.D. Cal. Oct. 3, 2022)................... 14

*Lyles v. Micenko*,
    404 F. Supp. 2d 182 (D.D.C. 2005) .................................................................... 14

*Matter of Dallas Roadster, Ltd.*,
    846 F.3d 112 (5th Cir. 2017) .............................................................................. 10

*Morowitz v. Marvel*,
    423 A.2d 196 (D.C. 1980) .................................................................................. 10

*Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*,
    885 F. Supp. 522 (S.D.N.Y. 1995) ..................................................................... 13

*Peckham v. Union Fin. Co.*
    48 F.2d 1016 (D.C. Cir. 1931) ............................................................................ 16

*Porous Media Corp. v. Pall Corp.*,
    186 F.3d 1077 (8th Cir. 1999) ............................................................................ 15

*PrinterOn Inc. v. BreezyPrint Corp.*,
    93 F. Supp. 3d 658  (S.D. Tex. 2015) ................................................................... 9

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)............................................................................................. 12

*Radar Sols., Ltd. v. U.S. Fed. Commc'ns Comm'n*,
  628 F. Supp. 2d 714 (W.D. Tex. 2009)..................................................................9

*Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.*,
  311 F. Supp. 3d 52 (D.D.C. 2018) ...............................................................16, 19

Texas. *Fina, Inc. v. ARCO*,
  200 F.3d 266 (5th Cir. 2000) ...........................................................................9

*Thorp v. D.C.*,
  319 F. Supp. 3d 1 (D.D.C. 2018), *aff'd*, 788 F. App'x 8 (D.C. Cir. 2019)........................10, 18

*Turpin v. Ray*,
  No. CV 19-2394 (RC), 2020 WL 1510412 (D.D.C. Mar. 30, 2020)................................10, 16

*Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*,
  207 F. Supp. 2d 221 (S.D.N.Y. 2002) ...........................................................12

*United Mine Workers of Am. v. Pennington*,
  381 U.S. 657 (1965)........................................................................................11

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
  858 F.2d 1075 (5th Cir. 1988) .......................................................................11

*Waller v. Hanlon*,
  922 F.3d 590 (5th Cir. 2019) ..........................................................................8

*Whelan v. Abell*,
  48 F.3d 1247 (D.C. Cir. 1995) .......................................................................11

**Statutes**

19 C.F.R. § 210.9 ............................................................................................2, 16

19 C.F.R. § 210.10 ..........................................................................................2, 16

28 U.S.C. § 1659 ................................................................................................6

35 U.S.C. § 112 ..................................................................................................3

**Rules**

Fed. R. Civ. P. 41(a)(1)(A)(i) .............................................................................6

I.      **INTRODUCTION**

Defendant ecobee, Inc.'s ("ecobee") counterclaims for malicious prosecution and abuse of process fail as a matter of law and should be dismissed. The gist of the counterclaims is that Plaintiff EcoFactor, Inc. ("EcoFactor") filed "seriatim lawsuits" (i.e., two ITC actions and two district court actions) asserting patent infringement in order to obtain a litigation advantage and drive up ecobee's litigation expenses. But these allegations do not support causes of action for malicious prosecution or abuse of process.

Supreme Court and Federal Circuit precedent hold that parties have a First Amendment right to petition the government, which includes the pursuit of litigation in administrative and judicial proceedings. Accordingly, a party asserting tort claims for abuse of process and malicious prosecution premised on the filing of a patent infringement suit must show that such suit was a "sham." This requires a threshold showing that the suit was objectively baseless. ecobee cannot meet this threshold requirement given that EcoFactor survived numerous motions for summary determination in the ITC actions, including on the issues of infringement and validity. In addition, this Court has already determined this action is "not frivolous" in denying ecobee's Rule 11 motion. EcoFactor's patent infringement suits are clearly not a sham, but rather a part of its good-faith efforts to obtain damages from infringers like ecobee. EcoFactor is thus immune from tort liability based on its constitutionally protected right to enforce its patents.

Furthermore, ecobee has failed to plausibly allege all of the required elements for its tort claims. Indeed, ecobee's allegations at most show that EcoFactor is litigating its claims in order to obtain favorable judgments (i.e., damages and injunctive relief) due to ecobee's infringement of EcoFactor's rights. There is nothing tortious about this. Any expenses incurred by ecobee in defending the lawsuits are merely part of the ordinary course of litigation and not the type of special injury required to support a claim for malicious prosecution or abuse of process.

Accordingly, ecobee's counterclaims for malicious prosecution and abuse of process should be dismissed with prejudice.

## II.    BACKGROUND

### A.    The Parties and Their Prior Litigation History[1]

Founded in 2006, EcoFactor has long been an innovator in smart home energy management services. Dkt. 1 (Complaint) ¶ 2. EcoFactor has developed a suite of software known as the "EcoFactor Platform" that incorporates EcoFactor's patented data analytics and machine learning algorithms, as well as its award-winning smart HVAC control technologies, and delivers intelligent energy management services that improve customer comfort while also saving time, energy, and money. *Id.* ¶¶ 2–3. EcoFactor's award-winning services have been offered through channel partners such as utilities, energy retailers, broadband service providers, and HVAC companies. *Id.* ¶ 2. Over the years, EcoFactor has expended tens of millions of dollars of research and development and technical services and support in the United States, and has been duly issued nearly 40 patents that cover its novel smart thermostat technology. *Id.* ¶ 4. But in recent years, an explosion of products that infringe EcoFactor's patented technology has significantly eroded its market standing. *Id.* ecobee is one provider of such infringing products. *Id.* ¶¶ 6, 10–14.

### 1.    ITC Investigation No. 337-TA-1185

In October 2019, EcoFactor filed a complaint against ecobee and other accused infringers, including Google, Alarm.com, Daikin, Schneider, and Vivint, in the U.S. International Trade Commission (ITC) under section 337 of the Tariff Act of 1930. Dkt. 53 (Answer) ¶ 14. The complaint alleged that respondents infringe U.S. Patent Nos. 8,131,497 ("'497 patent"), 8,423,322 ("'322 patent"), 8,498,753 ("'753 patent"), and 10,018,371 ("'371 patent"), all of which relate to smart thermostat technology.

On November 22, 2019, after reviewing EcoFactor's complaint and over the objections of ecobee and other respondents, the ITC instituted an investigation on all grounds and as to all proposed respondents pursuant to 19 C.F.R. §§ 210.9 and 210.10. *See In the Matter of Certain*

---

[1] Courts may take judicial notice of matters of public record, such as court proceedings and rulings, when deciding a motion to dismiss. *Ambler v. Williamson Cnty., Texas*, No. 1-20-CV-1068-LY, 2021 WL 769667, at *4 (W.D. Tex. Feb. 25, 2021).

*Smart Thermostats, Smart HVAC Systems, and Components Thereof*, Inv. No. 337-TA-1185 (the "1185 Investigation"); Ex. 1 (1185 Notice of Institution). After Daikin and Schneider settled, the remaining respondents filed numerous motions for summary determination, including for invalidity of the asserted claims of the '497 and '322 patents under § 101, invalidity of the '753 patent claims as indefinite under 35 U.S.C. § 112 ¶ 2, and no violation of section 337 due to EcoFactor's lack of domestic industry. ecobee also filed motions for summary determination of non-infringement of the '371, '497, and '322 patents. All motions for summary determination filed by Respondents were denied. Exs. 2–6.

An evidentiary hearing was held on November 16–19, 2020. Due to the highly compressed timeline and the number of respondents, patents, and products, EcoFactor significantly streamlined the number of claims to be presented at the hearing. As to ecobee, EcoFactor asserted claims 1, 2, and 5 of the '497 patent against the ecobee3 lite and the ecobee SmartThermostat with Voice Control. Dkt. 53 ¶ 24. EcoFactor chose not to assert any claims of the '753 patent against any Respondent, and the ALJ thus made no findings as to that patent.

On April 20, 2021, the ALJ issued a 592-page Final Initial Determination (ID). Dkt. 53 ¶ 25, Dkt. 53-1. In the ID, the ALJ set forth claim constructions of the disputed terms of the '497, '371, and '322 patents. Dkt. 53-1 (1185 ID) at 29–68.[2] The ALJ further found that the accused Smart Recovery feature of the ecobee3 lite and the ecobee SmartThermostat with Voice Control does not infringe claims 1, 2, and 5 of the '497 patent. *Id.* at 117, 153, 195, 202, 575. That feature is not accused of infringing the '497 patent here.

As to validity, the ALJ found that the asserted claims of the '497 and '322 patents were invalid for lack of written description and enablement under 35 U.S.C. § 112, and that claims 1, 2, and 5 of the '322 patent are invalid under §§ 102 and 103. Dkt. 53-1 at 527, 533, 538, 542, 576.[3]

---

[2] Notably, the ALJ's construction of the term "operational efficiency" (*id.* at 42)—a key aspect of ecobee's non-infringement arguments—was subsequently rejected by this Court, the District of Delaware, and the ITC itself in the 1258 Investigation.

[3] Several of these invalidity rulings were also premised in large part upon the same erroneous construction of "operational efficiency." *See, e.g.*, *id.* at 524, 530 (finding lack of possession of "operational efficiency" under the ALJ's erroneous construction).

But the ALJ rejected Respondents' assertions that the '497, '322, and '371 patents are invalid under § 101, and rejected Respondents' arguments that the '497 and '371 patents are invalid under §§ 102 or 103. *Id.* at 575–77.

As to the domestic industry requirement for establishing a violation under section 337, the ALJ found that the economic prong was not satisfied under §§ 337(a)(3)(A) and (B). *Id.* at 577. This was an erroneous ruling for various reasons that EcoFactor explained to the Commission, but in any event, EcoFactor was subsequently found to meet the economic prong of the domestic industry requirement in the 1258 Investigation—further demonstrating that EcoFactor's domestic industry assertions in the 1185 Investigation were far from frivolous. *See* Dkt. 53-4 at 132.

EcoFactor filed a notice of appeal to the Federal Circuit, but ultimately dismissed its appeal to bring its parallel district court cases to trial more quickly and focus resources on its other pending cases, including those before this Court.

Throughout the entire course of the 1185 Investigation, neither ecobee nor any other Respondent ever raised any argument that EcoFactor's allegations violated the sanctions provisions of 19 C.F.R. § 210.4, which is the ITC analog to Rule 11.

### 2.     ITC Investigation No. 337-TA-1258

In February 2021, EcoFactor filed a second ITC complaint against ecobee and other accused infringers regarding U.S. Patent Nos. 8,019,567 ("'567 patent"), 10,612,983 ("'983 patent"), 8,596,550 ("'550 patent"), 8,886,488 ("'488 patent"), and the '322 patent. Dkt. 53 ¶ 31. After review of the complaint, the ITC instituted an investigation on all grounds and as to all proposed respondents. *See In the Matter of Certain Smart Thermostat Systems, Smart HVAC Systems, Smart HVAC Control Systems, And Components Thereof*, Inv. No. 337-TA-1258 (the "1258 Investigation"); Ex. 7 (1258 Notice of Institution).

On October 13, 2021, Respondents moved for summary determination on a number of issues, including lack of domestic industry under section 337(a)(2) and (3), invalidity under § 112 as to the '488 patent, ineligibility under § 101 as to the '550 patent, and invalidity under § 102 as to the '983 patent (which EcoFactor later voluntarily terminated). Respondents' motion included

several arguments regarding issue preclusion based on the findings from the 1185 Investigation. The ALJ rejected each of Respondents' arguments and denied their motions for summary determination as to all issues. *See* Dkt. 53-4 (1258 ID) at 2. ecobee did not move for summary determination of non-infringement.

In light of a settlement and to streamline the issues for trial, EcoFactor ultimately narrowed its case to Respondents ecobee and Google and to the '550 and '488 patents. *Id.* As to ecobee, EcoFactor asserted at trial claim 17 of the '550 patent and claims 1 and 2 of the '488 patent against the ecobee3 lite and the ecobee SmartThermostat with Voice Control products. *Id.* at 4, 6.

The evidentiary hearing was held on December 13–17, 2021. On April 4, 2022, the ALJ issued its Final Initial Determination finding no violation under section 337. Dkt. 53-4. The ALJ found that the accused ecobee products did not infringe the asserted claims of the '550 and '488 patents, and that EcoFactor met the economic prong of the domestic industry requirement but did not meet its technical prong. *Id.* at 132. The ALJ also rejected ecobee's invalidity arguments based on prior art (as to all asserted claims) and its § 101 arguments for the '550 patent (claim 17), but found that all asserted claims were invalid for lack of written description and that claims 1 and 2 of the '488 patent were invalid under § 101. *See, e.g.*, *id*. at 67, 76, 108, 112, 132.

EcoFactor elected not to appeal the ALJ's ID in order to bring its parallel district court cases to trial more quickly and focus resources on its other pending cases.

Throughout the entire course of the 1258 Investigation, neither ecobee nor any other Respondent ever raised any argument that EcoFactor's allegations violated the sanctions provisions of 19 C.F.R. § 210.4.

### 3.     District Court Litigation

As this Court and presumably ecobee are well aware, it is common for patentees to seek enforcement of their patents in both the ITC and district court, as each forum addresses different infringing activity and offers different remedies. For example, section 337 is focused primarily on infringement by imported goods and offers relief in the form of exclusion orders. Unlike in district court, monetary damages for past infringement are not available in the ITC.

Accordingly, on November 12, 2019, shortly after filing its complaint in the 1185 Investigation, EcoFactor filed a patent infringement complaint against ecobee in the District of Massachusetts alleging infringement of the '497, '322, '753, and '371 patents (the same set of patents initially asserted in the 1185 Investigation). *EcoFactor, Inc. v. ecobee, Inc.*, No. 1:19-cv-12325-PBS (D. Mass.) ("Massachusetts Action"). The parties promptly filed a joint motion to stay the case pending resolution of the 1185 Investigation pursuant to the mandatory stay provision of 28 U.S.C. § 1659.[4] Mass. Action, Dkt. 7. The court entered a stay on January 15, 2020. Mass. Action, Dkt. 11.

Nearly two years later on January 10, 2022, while the case was still stayed, EcoFactor filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i). Mass. Action, Dkt. 20. ecobee had neither answered the complaint nor filed a motion for summary judgment, therefore the dismissal was "automatic and immediate." *In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165 (3d Cir. 2008). ecobee nonetheless filed an "objection" to the notice of dismissal, but the Massachusetts court properly overruled it and dismissed the case. Mass. Action, Dkt. 22, 24.

That same day (January 10, 2022), EcoFactor refiled its claims regarding the '497, '322, '753, and '371 patents in this Court, which by that time already had substantial experience with EcoFactor, its patents, and the relevant smart thermostat technology. Dkt. 1, Dkt. 53 ¶ 38. Indeed, this Court recently conducted a full jury trial in Case No. 6:20-cv-00075-ADA ("*Google*"). In that case, the jury found the asserted claims of the '327 patent valid and infringed, and awarded EcoFactor $20 million in damages. *Google*, Dkt. 215, 244.

Previously, on January 31, 2020, EcoFactor filed a patent infringement complaint against ecobee in this Court, alleging infringement of U.S. Patent Nos. 8,180,492 ("'492 patent"), 8,412,488 ("'2488 patent"), 8,738,327 ("'327 patent"), and 10,534,382 ("'382 patent").

---

[4] ecobee's Answer falsely and misleadingly asserts that only ecobee sought a stay, and that EcoFactor was attempting to "prevent a statutorily-mandated stay in Massachusetts." Dkt. 53 ¶¶ 17–18. But the Massachusetts docket clearly shows that the motion to stay was jointly filed by both EcoFactor and ecobee.

*EcoFactor, Inc. v. ecobee, Inc.*, No. 6:20-cv-00078-ADA (W.D. Tex.) ("WDTX I"). That case has been narrowed to include only the '327 patent at trial. Dkt. 53 ¶¶ 20–21.

On April 28, 2021, EcoFactor filed another patent infringement complaint against ecobee in this Court, alleging infringement of U.S. Patent Nos. 8,740,100 ("'100 patent"), 8,751,186 ("'186 patent"), 9,194,597 ("'597 patent"), and 10,584,890 ("'890 patent"). *EcoFactor, Inc. v. ecobee, Inc.*, No. 6:21-cv-00428-ADA (W.D. Tex.) ("WDTX II"). WDTX I and WDTX II have been consolidated, and trial was recently rescheduled for June 20, 2023.

### B.    This Court's Denial of ecobee's Rule 11 Motion for Sanctions

On February 9, 2022, ecobee filed a motion for sanctions under Rule 11, arguing that EcoFactor and its counsel are "relitigating baseless patent infringement claims against ecobee that they know are not supported and have previously lost on before; brought for the purpose of increasing ecobee's litigation costs; hope will prolong their baseless litigation campaign; and hope will improperly leverage an unwarranted settlement in Plaintiff's vexatious litigation campaign against ecobee." Dkt. 17 at 1. ecobee also filed a motion to dismiss, stay, or transfer pursuant to Rule 12(b)(3), 12(b)(6), and the first-to-file rule based on similar arguments relating to the prior 1185 Investigation and the Massachusetts Action. Dkt. 20.

EcoFactor opposed, explaining, *inter alia*, that it conducted a reasonable pre-suit investigation, that the findings in the 1185 Investigation are not binding on this Court and are far more limited than ecobee suggests, and that there are key differences between the 1185 Investigation and the present case. Dkt. 18. For example, the ALJ in the 1185 Investigation made no findings as to whether ecobee's products infringe the '753, '371, and '322 patents, and made no findings as to whether ecobee's eco+ suite of features accused here (e.g., Time of Use and Demand Response optimization) infringe the '497 patent. *Id.* at 8–9. Indeed, it is undisputed that ecobee did not produce source code for eco+ features in the 1185 Investigation, and has since generated new documentation about eco+, which was not even released to customers until after the 1185 Investigation was under way. *Id.* at 9. This and other evidence that was not available to

EcoFactor during the 1185 Investigation (both from ecobee and from highly relevant third parties) will support EcoFactor's infringement claims in this action.

On August 22, 2022, this Court entered an omnibus order denying ecobee's motion for sanctions, and denying ecobee's motion to dismiss or transfer pursuant to Rule 12(b)(3), 12(b)(6), and the first-to-file rule. Dkt. 46. The Court determined that EcoFactor's infringement claims are not frivolous, "emphasiz[ing] that the ITC's 1185 Investigation has no preclusive effect on the Asserted Patents" and that "[a]t best, the ITC's findings are persuasive authority." *Id.* at 7. The Court also agreed that "the findings of the 1185 Investigation were limited in scope as there were no findings of noninfringement as to the '753 Patent, '371 Patent, and the '322 Patent." *Id.* Furthermore, the Court agreed with EcoFactor that its over 350 pages in claim charts evidenced a reasonable pre-suit inquiry under Rule 11. *Id.* at 7–8.

The Court squarely rejected each of ecobee's arguments regarding alleged misrepresentations made by EcoFactor, and determined that EcoFactor did not engage in improper forum shopping by voluntarily dismissing the Massachusetts Action. *Id.* at 8–10. As noted by the Court, "notices of voluntary dismissal are automatic as long as filed before the opposing party serves either an answer or motion for summary judgment," and "ecobee did neither of these things." *Id.* at 11. The Court also agreed with EcoFactor that "this forum would be the most efficient means of resolving the Asserted Patents due to the Court's familiarity with EcoFactor's related patents and ecobee's accused products." *Id.*

## III.    LEGAL STANDARD

### A.    Motion for Judgment on the Pleadings

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And while a court must accept "well-pleaded facts" as true, the court

"need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Radar Sols., Ltd. v. U.S. Fed. Commc'ns Comm'n*, 628 F. Supp. 2d 714, 723 (W.D. Tex. 2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 545). In other words, the court must determine "whether we can reasonably infer from the complaint's well-pleaded factual content 'more than the mere possibility of misconduct.'" *Waller*, 922 F.3d at 599. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

   **B.      Choice of Law for ecobee's Tort Claims**

   "A federal court must follow the choice-of-law rules of the state in which it sits," in this case, Texas. *Fina, Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000). For tort cases, "Texas follows the 'most significant relationship test' set out in the Restatement (Second) of Conflict of Laws § 6 and § 145." *PrinterOn Inc. v. BreezyPrint Corp.*, 93 F. Supp. 3d 658, 705 (S.D. Tex. 2015) (quoting *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 802 (5th Cir. 2007)). Accordingly, the rights and liabilities for claims of malicious prosecution and abuse of process are generally determined by the law of the place of injury, i.e., where the proceeding occurred. *See id.*; Restatement (Second) of Conflict of Laws §§ 145, 155.

   Here, ecobee's claims for malicious prosecution and abuse of process are primarily based on the two ITC actions, which took place in Washington, D.C. Therefore, the law of the District of Columbia should apply to these tort claims. *See Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1157–58 (N.D. Cal. 2003) (holding that under the most significant relationship test, "the law of the District of Columbia—where the ITC proceeding occurred—should be applied" to defendants' counterclaims regarding abuse of process based on the initiation of ITC proceedings). To the extent that ecobee's abuse of process claims are directed to EcoFactor's litigation in this Court, Texas law may also apply.

### 1.   Malicious Prosecution

"To prevail in a claim of malicious prosecution, a plaintiff must plead and prove four elements: (1) the underlying suit terminated in plaintiff's favor; (2) malice on the part of defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action." *Turpin v. Ray*, No. CV 19-2394 (RC), 2020 WL 1510412, at \*14 (D.D.C. Mar. 30, 2020) (cleaned up) (citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)).

### 2.   Abuse of Process

Under District of Columbia law, "abuse of process occurs when 'process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010). "There are two essential elements to an abuse of process claim: '(1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge.'" *Id.* "[T]here is no action for abuse of process when the process is used for the purpose for which it is intended,' even if there 'is an incidental motive of spite or an ulterior purpose of benefit to the defendant.'" *Thorp v. D.C.*, 319 F. Supp. 3d 1, 22 (D.D.C. 2018), *aff'd*, 788 F. App'x 8 (D.C. Cir. 2019).

Texas law is similar. To establish a claim for abuse of process, the plaintiff must show "(1) the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage resulted to the plaintiff as a result of such illegal act." *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 124 (5th Cir. 2017). "Critically, the focus is on the use of the process once it is properly obtained, not on the motive for originally obtaining the process." *Id.* "Additionally, the process must be used to compel a party to do a collateral thing which he would not be compelled to do otherwise." *Id.* at 125.

IV.     **ARGUMENT**

A.      **ecobee's Tort Claims Are Barred Under the *Noerr-Pennington* Doctrine**

Under the *Noerr-Pennington* doctrine established by the Supreme Court, private parties are immune from liability for exercising their First Amendment right to petition the government, which includes the pursuit of litigation in administrative and judicial proceedings. *Carroll Touch, Inc. v. Electro Mech. Sys.*, Inc., 15 F.3d 1573, 1582 (Fed. Cir. 1993) (citing *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, (1972)). Several courts, including the Federal Circuit and D.C. Circuit, have extended *Noerr-Pennington* immunity to state law claims such as malicious prosecution and abuse of process predicated on the filing of patent infringement suits. *See, e.g.*, *Carroll Touch*, 15 F.3d at 1581–83 (affirming dismissal of state law unfair competition and abuse of process claims against patentee under *Noerr* immunity); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999) (applying *Noerr-Pennington* to and affirming dismissal of claims for malicious prosecution and unfair competition based on initiation of ITC proceeding); *Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C. Cir. 1995) ("As *Noerr-Pennington* rests on the conclusion that the filing of claims in court or before administrative agencies is part of the protected right to petition, it is hard to see any reason why, as an abstract matter, the common law torts of malicious prosecution and abuse of process might not in some of their applications be found to violate the First Amendment."); *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996) (holding that "*Noerr* immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity" and dismissing state law claims predicated on the alleged bad faith institution of patent infringement proceedings); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) ("There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust.").

Accordingly, in order to maintain claims for malicious prosecution or abuse of process against a patentee based on the initiation of patent infringement proceedings, a claimant must

demonstrate that such proceedings fall within the "sham" litigation exception to the *Noerr-Pennington* doctrine. This requires a two-part showing. *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 50 (1993) ("*PRE*"). "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* And second, the objectively baseless suit must "conceal[] an attempt to interfere directly with a competitor's business relationships through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* (emphasis in original). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* "[A]n objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Id.* at 57; *see also Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) ("A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless" under the standard set forth in *PRE*.).

Here, ecobee's tort counterclaims for malicious prosecution and abuse of process should be dismissed because ecobee cannot show that the underlying patent proceedings were a sham. First, ecobee has not pled sufficient facts to establish that EcoFactor's claims in any proceeding were objectively baseless. Nor can it given that EcoFactor's claims survived numerous motions for summary determination (including on issues of non-infringement and invalidity) and proceeded to trial in both the 1185 and 1258 Investigations (Exs. 2–6; Dkt. 53-4 at 2). *See Avitech, LLC v. Embrex, Inc.*, No. WMN-04-3082, 2008 WL 11287093, at *3, *5 (D. Md. Aug. 19, 2008) ("the Court must conclude that [patentee] had probable cause to bring suit and is entitled to *Noerr-Pennington* immunity as a matter of law" where patentee's claims survived summary judgment, noting that a "majority of courts considering the issue have reached the same result"); *Alifax Holding SPA v. Alcor Sci. Inc.*, No. CV 14-440 WES, 2019 WL 13091790, at *12 (D.R.I. Mar. 26, 2019) (observing that a "legion of federal courts, including the Federal Circuit, have held that a denial of summary judgment precludes a finding of objective baselessness as a matter of law"); *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 223–24

(S.D.N.Y. 2002) (finding it "legally impossible" for plaintiffs to prove objective baselessness where four of the six asserted patents survived summary judgment, and two proceeded through trial); *Gen-Probe*, 926 F. Supp. at 958 (finding plaintiff's claims of sham litigation "must fail" where the underlying lawsuits survived motions for summary judgment); *Globetrotter*, 362 F.3d at 1375 (concluding that patentee's infringement claim was not objectively baseless as "amply demonstrated" by the Federal Circuit's reversal of summary judgment); *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 885 F. Supp. 522, 526 (S.D.N.Y. 1995) (ITC's determination that sufficient bases existed to commence infringement investigation and denial of motions for summary determination supported finding that claims were not objectively baseless).

In addition, this Court has already rejected ecobee's Rule 11 arguments and ruled that EcoFactor's infringement claims in this case (which are the same as those asserted in the Massachusetts action) are "***not frivolous***." Dkt. 46 at 5–8. Any argument regarding the purported baselessness of EcoFactor's clams in the consolidated WDTX I and II actions fails for the same reasons set forth in the Court's order, as there have been no findings of noninfringement or invalidity as to the asserted patents in those cases, and, similar to this case, EcoFactor submitted hundreds of pages of claim charts in support of its infringement allegations. *See, e.g.*, WDTX II, Dkt. 1-2, 1-4, 1-6, 1-8. ecobee's conclusory allegations that EcoFactor's claims are "baseless" are insufficient to avoid *Noerr-Pennington* immunity.

While the Court need not reach the subjective intent prong of the "sham" litigation exception, it is clear that ecobee cannot meet that element either. ecobee has not pled any facts to show that EcoFactor sought to use the litigation *process* to interfere directly with ecobee's business relationships, as opposed to simply seeking favorable outcomes in the respective infringement proceedings (e.g., compensation for ecobee's unauthorized use of EcoFactor's patents and injunctions against ecobee's continued infringement). *See PRE*, 508 U.S. at 50. As correctly noted by one court in dismissing a claim for abuse of process, "[e]nforcement of patent rights is a permissible use of the legal process." *Deere & Co. v. Kinze Mfg., Inc.*, No. 4:20-cv-00389-RGE-SHL, Dkt. 164 at 42 (S.D. Iowa Feb. 16, 2022); *IT Casino Sols., LLC v. Transient Path, LLC*, No.

21-CV-09872-WHO, 2022 WL 4913526, at *12 (N.D. Cal. Oct. 3, 2022) (dismissing abuse of process counterclaim under *Noerr-Pennington*—plaintiff "has the right to bring suit if it believes its patents are being infringed upon"). Indeed, "[p]atents would be of little value if infringers of them could not be . . . proceeded against in the courts." *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008). As such, "a party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry." *Id.* at 1370. ecobee has not met that burden here.

Because ecobee cannot show that EcoFactor's patent infringement cases against it fall under the sham litigation exception of the *Noerr-Pennington* doctrine, ecobee's claims for malicious prosecution and abuse of process should be dismissed.

### B.   ecobee Has Failed to Plead Sufficient Facts to Support Its Claims for Malicious Prosecution and Abuse of Process

ecobee has also failed to plead sufficient facts to support each of the requisite elements for claims for malicious prosecution and abuse of process. For malicious prosecution, ecobee has failed to allege sufficient facts to support lack of probable cause, malice, and special injury. And for abuse of process, ecobee has failed to allege an improper act in the use of process and damages. Accordingly, these claims should be dismissed.

#### 1.   ecobee fails to state a claim for malicious prosecution

ecobee's claim for malicious prosecution is based solely on the 1185 and 1258 Investigations. Dkt. 53 ¶¶ 112–14. ecobee, however, has failed to allege any facts to support that these ITC actions were initiated without probable cause. As held by the Supreme Court, "[p]robable cause to institute civil proceedings requires no more than a 'reasonable belief that there is a chance that a claim may be held valid upon adjudication.'" *PRE*, 508 U.S. at 62–63. "Whether a person has probable cause to institute a suit "depends not on the actual state of the case in point of fact, but upon the honest belief of the person instituting it and may flow from a belief that turns out to be unfounded as long as it is not unreasonable." *Lyles v. Micenko*, 404 F. Supp. 2d 182, 190 (D.D.C. 2005).

ecobee has failed to allege any facts demonstrating that EcoFactor's belief in its infringement allegations was unreasonable. Nor can it, given that (a) the ITC, after review of EcoFactor's complaints and accompanying exhibits, which included claim charts for each of the asserted patents, decided to institute investigations into EcoFactor's claims (Exs. 1, 7), and (b) EcoFactor's claims withstood numerous motions for summary determination, including on the issues of invalidity and non-infringement, and proceeded to trial (Exs. 2–6; Dkt. 53-4 at 2). This precludes any finding that the 1185 and 1258 Investigations were initiated without probable cause. *See Avitech*, 2008 WL 11287093, at *5 (collecting cases); *Gen-Probe*, 926 F. Supp. at 958; *Globetrotter*, 362 F.3d at 1375; *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999) (denial of judgment as a matter of law "fatal" to claim for malicious prosecution); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("[W]e find it difficult to agree that the inequitable conduct defense was 'baseless' when it survived a motion for summary judgment and was rejected only after findings were made on disputed facts."). The mere fact that EcoFactor was ultimately unsuccessful in proving section 337 violations is inconsequential. EcoFactor reasonably believed it had a chance of success, which is an "absolute defense" to a claim of malicious prosecution. *PRE*, 508 U.S. at 63.

In addition, ecobee has failed to sufficiently plead the element of malice. According to the counterclaim, malice is purportedly shown by EcoFactor's "insufficient pre-filing investigation of its infringement claims in First and Second ITC Proceedings and district court actions; its continued pursuit of infringement claims against ecobee even though the Asserted Patents are invalid and not infringed by ecobee; its litigation strategy of filing seriatim lawsuits in multiple jurisdictions against the same products without a reasonable explanation for doing so; and its attempt to relitigate issues already adjudicated in the ITC Proceedings." Dkt. 53 ¶ 116. But none of these allegations establish that EcoFactor prosecuted the *ITC actions* for any improper purpose. To the contrary, most of these purported "facts" arose *after* the ITC actions concluded (e.g., the alleged re-litigation *in district court* of issues adjudicated in the ITC proceedings) and thus have nothing to do with EcoFactor's motivation for prosecuting the ITC actions at all. Furthermore,

ecobee's allegation of "insufficient pre-filing investigation" is directly refuted by even a cursory review of EcoFactor's detailed ITC complaints, the numerous supporting exhibits including 600+ pages of claim charts for ecobee's products alone, and the fact that, after review of these allegations and evidence, the ITC exercised its authority to institute investigations into EcoFactor's claims and denied numerous motions for summary determination. Exs. 1–9; Dkt. 53-4 at 2; 19 C.F.R. §§ 210.9, 210.10.

Finally, ecobee's malicious prosecution claim fails for yet another independent reason: ecobee has not alleged any special injury incurred as a result of the ITC actions. *Turpin*, 2020 WL 1510412, at *14. "'Special injury' for purposes of a malicious prosecution claim is defined as 'arrest, seizure of property, or injury *which would not necessarily result from suits to recover for like causes of action*.'" *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 20 (D.D.C. 2015) (emphasis added); *see also Peckham v. Union Fin. Co.*, 48 F.2d 1016, 1017 (D.C. Cir. 1931) (no cause of action for malicious prosecution "where there has been no arrest of the person or seizure of property"). Here, the only injuries alleged by ecobee are monies spent defending itself in the ITC actions, and purported damage to its reputation as an "independent and ethical innovator of smart thermostat products." Dkt. 53 ¶¶ 44, 117. These vague, unsupported assertions merely "describe the kind of damages ordinarily resulting from a patent infringement suit" and thus do not constitute the special injury required to support a malicious prosecution claim. *Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, No. CIV. CCB-13-1798, 2014 WL 3510212, at *2 (D. Md. July 11, 2014) (finding infringer failed to plead any special injury resulting from the ITC proceedings and dismissing malicious prosecution claim based on vague allegations of "lost business"); *Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.*, 311 F. Supp. 3d 52, 57 (D.D.C. 2018) ("injuries to reputation, emotional distress, loss of income, and substantial expense in defending are outside the scope of what constitutes a 'special injury'").

In sum, ecobee's failure to sufficiently allege facts to support that EcoFactor initiated the ITC actions without probable cause and with malicious intent, and that ecobee suffered special injury as a result, requires dismissal of its counterclaim for malicious prosecution.

### 2.    ecobee fails to state a claim for abuse of process

ecobee has also failed to plausibly allege a claim for abuse of process. ecobee generally alleges that EcoFactor has "misused the legal process to obtain a collateral litigation advantage that could not be obtained if such process was used properly." Dkt. 53 ¶ 120. More "specifically," ecobee alleges that EcoFactor has used a "strategy of filing seriatim lawsuits asserting the same or related patents against the same products in multiple jurisdictions to obtain an improper and unfair collateral advantage over ecobee, including but not limited to trying to escalate the cost and burden of repeatedly defending against baseless infringement claims in multiple venues; seeking to relitigate issues of claim construction, infringement, invalidity; and seeking to recover duplicative damages based on sales of the same accused products." *Id.* ¶ 121. This fails.

As an initial matter, at least one court has rejected the notion that ITC proceedings can serve as a basis for an abuse of process claim, even where the ITC action was allegedly used to gain an advantage in district court. *See Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1155 (N.D. Cal. 2003) (dismissing abuse of process counterclaim based on misuse of ITC proceeding—"no authority to support the existence of an abuse of process claim based on an ITC proceeding, either under state or federal law") (citing *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1355 (Fed. Cir. 1992)). This alone warrants dismissal of ecobee's abuse of process claim.

But even assuming the ITC actions can properly be considered here, the claim still fails. ecobee has failed to allege any facts to support that EcoFactor had an "ulterior motive" other than to successfully enforce its patent rights against ecobee. Indeed, each of the above allegations regarding EcoFactor's alleged attempts to obtain a "collateral litigation advantage" are consistent with EcoFactor's pursuit of favorable judgments in the respective infringement proceedings. There is nothing improper about this. *See Houlahan*, 677 F. Supp. 2d at 201 (noting that the "usual case of abuse of process is one of some form of extortion"); *800 Adept*, 539 F.3d at 1369 ("a party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry"). As aptly explained by one court, "[s]killful lawyers not infrequently take advantage of whatever forums are available to them to prevail either in the prosecution of a lawsuit or in the

17

defense of another lawsuit. Such conduct is part of the litigation process; it is not tortious." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 107 (S.D.N.Y. 2020) (dismissing abuse of process claim based on alleged filing of lawsuit to "gain tactical advantage" in another litigation).

Furthermore, ecobee has failed to plausibly allege any "*act* in the use of process other than such as would be proper in the regular prosecution of the charge." *Houlahan*, 677 F. Supp. 2d at 199. Even if EcoFactor had an ulterior motive (which it did not), "there is no action for abuse of process when the process is used for the purpose for which it is intended." *Thorp*, 319 F. Supp. at 22. And here, ecobee has not alleged a single fact supporting an improper act in the use of any proceeding. ecobee's allegations amount to little more than: EcoFactor filed multiple patent infringement lawsuits (two ITC actions and two district court actions) against ecobee, and is maintaining those lawsuits by litigating claim construction, infringement, invalidity issues in order to ultimately obtain a favorable judgment. These acts are part of the regular prosecution of a patent infringement case and cannot be an abuse of process as a matter of law. *See Cantu v. Guerra*, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2652933, at *18 (W.D. Tex. June 28, 2021) ("[A]buse of process consists not in the filing and maintenance of a civil action, but rather in the perversion of some process issued in the suit after its issuance."); *Houlahan*, 677 F. Supp. 2d at 200 n.6 ("allegation that defendants knowingly brought suit on an unfounded claim is not by itself sufficient to support an abuse of process cause of action"); *Deere*, slip op. at 42 (dismissing abuse of process claim which failed to allege that patentee was "using the patent infringement suit to attempt to secure some collateral advantage not included in the litigation process itself"); *Gust, Inc. v. AlphaCap Ventures, LLC*, No. 15CV6192 (DLC), 2016 WL 4098544, at *6 (S.D.N.Y. July 28, 2016) (dismissing abuse of process claim premised on filing of the patent infringement complaints); *In re Burzynski*, 989 F.2d 733, 740 (5th Cir. 1993) ("no liability" for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions").

Finally, ecobee has failed to allege any legally cognizable claim for damages arising from the alleged abuse of process. While ecobee vaguely references the "cost and burden" of defending

the lawsuits, the "expense arising from the defense of a lawsuit … is 'an insufficient injury to sustain the cause of action.'" *HC2*, 510 F. Supp. 3d at 107. "[H]igh attorneys' fees and expenses" are merely the "unhappy incident of almost any litigation and are an insufficient basis for an abuse of process claim." *Rockwell*, 311 F. Supp. 3d at 56.

## V.     CONCLUSION

For the foregoing reasons, ecobee's counterclaims for malicious prosecution and abuse of process should be dismissed with prejudice.


Dated: March 13, 2023                    Respectfully submitted,


                                         */s/ Reza Mirzaie*
                                         Reza Mirzaie
                                         Marc A. Fenster
                                         Kristopher Davis
                                         James Pickens
                                         Minna Chan
                                         Jason Wietholter
                                         Russ August & Kabat
                                         12424 Wilshire Boulevard, 12th Floor
                                         Los Angeles, CA 90025
                                         Telephone: (310) 826-7474

                                         Matthew D. Aichele
                                         Russ August & Kabat
                                         800 Maine Ave SW, Suite 200
                                         Washington, DC. 20024
                                         Telephone: (202) 664-0623

                                         **Attorneys for Plaintiff EcoFactor, Inc.**

19

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record via electronic service on March 13, 2023.

/s/ *Reza Mirzaie*